UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**RECOVERY LIMITED PARTNERSHIP,**

    Plaintiff,

v.                             CIVIL ACTION NO: 2:87cv363

**THE WRECKED AND ABANDONED VESSEL,
S.S. CENTRAL AMERICA, ET AL.**

    Defendant.

## OPINION

This matter comes before the court on the Motion for Award of Title ("Motion") and Memorandum in Support ("Memorandum"), filed by the Plaintiff, Recovery Limited Partnership ("RLP"), on September 5, 2014. ECF Nos. 139, 140.[1] The Motion is now ripe for decision[2] and, for the reasons set forth below, is **DENIED**.

---

[1] The court declared RLP to be the real-party-in-interest in this case in its Memorandum Opinion and Order of July 9, 2014. ECF No. 92. That same day, the court consolidated Case No. 2:14cv160 with Case No. 2:87cv363. Mem. Order, ECF No. 94. Any reference herein to a pre-consolidation filing, in Case No. 2:14cv160, is designated as such.

[2] Due to the pending appeal of this court's dismissal of third-party individual claims against the in rem Defendant, the Motion was not ripe for decision until July 31, 2015. See infra note 6 and accompanying text; see also Order of February 11, 2015, at 2 n.2, ECF No. 179 ("The court has not yet decided the Motion for Award of Title, and will not do so while the claims of Robol and Davidson are pending appeal in the Fourth Circuit.").

## I. Factual and Procedural History

The instant Motion is related to the litigation over the salvage rights to the wreck of the S.S. Central America ("Central America"). This in rem action has resulted in numerous opinions, dating back to 1987. These opinions thoroughly review much of the factual and procedural history relevant to this extended litigation, and that history will not be repeated in detail here.

The Central America sank off the coast of Charleston, South Carolina, on September 12, 1857, taking with it approximately 425 persons and $1,219,189 in gold (exclusive of passenger gold). Shortly thereafter, insurance underwriters in New York and London paid claims to the owners of the gold. The underwriters contemplated raising the wreck, but the location of the ship was unknown. The Central America and its treasure remained on the ocean floor until 1989, when RLP's agent, Columbus-America Discovery Group ("CADG"), discovered the wreck's precise location, approximately 160 miles off the east coast of the United States, and some one and one-half miles below the surface.

On August 14, 1990, the court found that CADG, already the first salvor with the right to exclude others,[3] was the finder and sole owner of the gold. Columbus-America Discovery Grp. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 742 F. Supp.

---

[3] CADG had enjoyed the status of first salvor, entitled to salvage the Central America without interference, since the court's Order of August 18, 1989.

2

1327, 1344-48 (E.D. Va. 1990) ("CADG I"). On direct appeal, however, the Court of Appeals for the Fourth Circuit held that the district court erred in applying the law of finds, rather than the law of salvage, to the gold recovered from the wreck. Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 974 F.2d 450, 468 (4th Cir. 1992) ("CADG II"), cert. denied, 507 U.S. 1000 (1993). On remand, the district court found that CADG was entitled to a salvage award of ninety percent (90%) of the recovered gold. Columbus-America Discovery Grp. v. Unidentified, Wrecked & Abandoned Sailing Vessel, No. 87-363-N, 1993 WL 580900, at *32 (E.D. Va. Nov. 18, 1993) ("CADG III"). The Fourth Circuit affirmed this decision. Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 562, 576 (4th Cir. 1995) ("CADG IV"). CADG and the underwriters eventually agreed to a settlement, which "eliminate[d] the possibility of claims between the parties over future salvage." Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 300 (4th Cir. 2000) ("CADG V").

From CADG V until 2014, there were only infrequent filings made in this case. On January 3, 2014, RLP moved to be substituted as the real-party-in-interest, for the then-Plaintiff CADG. ECF No. 1. On July 9, 2014, the court granted RLP's Motion to Substitute Party, and named RLP as the salvor-in-possession of

1327, 1344-48 (E.D. Va. 1990) ("CADG I"). On direct appeal, however, the Court of Appeals for the Fourth Circuit held that the district court erred in applying the law of finds, rather than the law of salvage, to the gold recovered from the wreck. Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 974 F.2d 450, 468 (4th Cir. 1992) ("CADG II"), cert. denied, 507 U.S. 1000 (1993). On remand, the district court found that CADG was entitled to a salvage award of ninety percent (90%) of the recovered gold. Columbus-America Discovery Grp. v. Unidentified, Wrecked & Abandoned Sailing Vessel, No. 87-363-N, 1993 WL 580900, at *32 (E.D. Va. Nov. 18, 1993) ("CADG III"). The Fourth Circuit affirmed this decision. Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 562, 576 (4th Cir. 1995) ("CADG IV"). CADG and the underwriters eventually agreed to a settlement, which "eliminate[d] the possibility of claims between the parties over future salvage." Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 300 (4th Cir. 2000) ("CADG V").

From CADG V until 2014, there were only infrequent filings made in this case. On January 3, 2014, RLP moved to be substituted as the real-party-in-interest, for the then-Plaintiff CADG. ECF No. 1. On July 9, 2014, the court granted RLP's Motion to Substitute Party, and named RLP as the salvor-in-possession of

the Central America. Mem. Op. & Order at 26, ECF No. 92.[4] In that Order, the court noted that "[s]alvors do not receive title to the salvaged property." Id. at 8 (emphasis added). Subsequently, RLP has successfully recovered thousands of artifacts (the "recovered artifacts") from the wreck of the Central America.[5]

On April 17, 2014, the court ordered RLP to publish notice of the action and arrest of the Central America for four successive weeks, directing that "any persons claiming any interest in the in rem Defendant file their respective claims and

---

[4] Milton T. Butterworth, purportedly on behalf of CADG, filed a Notice of Appeal as to this Order on August 8, 2014. See ECF No. 116. The Fourth Circuit dismissed this appeal for failure to prosecute on October 16, 2014. See ECF Nos. 168, 169.

[5] See Decl. & Inventory, September 15, 2014, ECF No. 157; Decl. & Inventory, August 15, 2014, ECF No. 120; Decl. & Inventory, July 17, 2014, ECF No. 101; Letter & Inventory, June 16, 2014, Case No. 2:14cv160, ECF No. 63; Letter & Inventory, June 6, 2014, Case No. 2:14cv160, ECF No. 56; Letter & Inventory, May 16, 2014, Case No. 2:14cv160, ECF No. 23; see also Report to Court, January 23, 2015, ECF No. 176 (2014 End of Year Report); Sixth Report Regarding Salvage Operations, November 25, 2014, ECF No. 175 (detailing RLP's new deep search and survey tool and describing the preservation of already-recovered artifacts); Fifth Report Regarding Salvage Operations, September 25, 2014, ECF No. 163 (summarizing RLP's recovery operations between August 16, 2014, and September 15, 2014); Fourth Report Regarding Salvage Operations, August 25, 2014, ECF No. 130 (summarizing RLP's recovery operations between July 16, 2014, and August 15, 2014); Third Report Regarding Salvage Operations, July 23, 2014, ECF No. 104 (summarizing RLP's recovery operations between June 16, 2014, and July 15, 2014); Second Report Regarding Salvage Operations, June 24, 2014, Case No. 2:14cv160, ECF No. 90 (summarizing RLP's recovery operations between May 14, 2014, and June 15, 2014); First Report Regarding Salvage Operations, May 15, 2014, Case No. 2:14cv160, ECF No. 21 (summarizing RLP's recovery operations between April 15, 2014, and May 13, 2014).

Answers to the Complaint with the clerk of the Court within 30 days of the last publication of such notice." Order to Issue Warrant of Maritime Arrest at 2, Case No. 2:14cv160, ECF No. 4. RLP complied with the court's Order, and published notice in The Virginian-Pilot newspaper on May 5, 2014, May 12, 2014, May 19, 2014, and May 26, 2014; and online at <http://legals.hamptonroads.com>, on those same dates. Notice, Case No. 2:14cv160, ECF No. 58. In response, four parties came forward and filed timely claims with this court: CADG, Case No. 2:14cv160, ECF No. 16; Richard T. Robol and the Robol Law Office ("Robol"), Case No. 2:14cv160, ECF No. 76; Collette Davidson ("Davidson"), Case No. 2:14cv160, ECF No. 84; and Milton T. Butterworth Jr. ("Butterworth"), Case No. 2:14cv160, ECF No. 85. The court denied CADG's claim on July 9, 2014. Mem. Order at 7, Case No. 2:14cv160, ECF No. 95. On August 8, 2014, the court dismissed the claims of Robol, Davidson, and Butterworth, for failure to state a claim under salvage law. Mem. Order at 2, ECF No. 114.[6] The time

---

[6] Robol, Davidson, and Butterworth each filed a separate notice of appeal as to the court's Memorandum Order of August 8, 2014, dismissing their individual claims. See ECF Nos. 138, 146, & 148. The Fourth Circuit dismissed Butterworth's appeal for failure to prosecute on November 12, 2014. See ECF Nos. 173 & 174. On February 25, 2015, by an unpublished per curiam opinion, the Fourth Circuit dismissed Davidson's appeal and affirmed this court's Memorandum Order of August 8, 2014, as to Davidson. See ECF Nos. 180 & 181. Thereafter, in a published opinion, the Fourth Circuit affirmed this court's Memorandum Order of August 8, 2014, with respect to Robol, finding, among other things, that "Robol had a preexisting duty to return files to his

to file additional claims against the in rem Defendant has expired. See Order to Issue Warrant of Maritime Arrest at 2.

In the instant Motion, RLP asserts that "[t]he artifacts recovered from the wreck are wholly derelict and abandoned property, and because RLP has reduced these artifacts to its possession, it is entitled to ownership of the recovered items." Mot. at 3 (emphasis added). In support, RLP cites CADG II, claiming that "the Fourth Circuit ruled in 1992 that CADG may be declared the finder and sole owner of any of those items that it recovered." Mem. Supp. Mot. at 2 (emphasis added).[7] RLP argues

---

former clients, notwithstanding the fact that the clients had not paid him all of the legal fees to which he claimed entitlement, and therefore that his action was not voluntary." Recovery Ltd. P'ship v. Wrecked & Abandoned Vessel S.S. Cent. Am., No. 14-1950, 790 F.3d 522 (4th Cir. June 22, 2015). Robol filed a petition for rehearing or rehearing en banc; however, no judge requested a poll under Federal Rule of Appellate Procedure 35 on the petition for rehearing or rehearing en banc. See ECF Nos. 188, 190. Accordingly, the Fourth Circuit mandate issued on July 31, 2015. See ECF No. 191.

[7] The court notes both that the Fourth Circuit's ruling was, in fact, more narrow on this point, and that the Fourth Circuit was considering the specific issue of "whether the district court correctly found that the insured shipments of gold were abandoned by the underwriters." CADG II, 974 F.2d at 465. Specifically, in holding "that the lower court clearly erred when it found an abandonment and applied the law of finds" and in directing the district court to apply the law of salvage to determine the proper salvage award for CADG, the Fourth Circuit stated: "Columbus-America may be declared the finder and sole owner, as to any recovered parts of the ship, all passenger possessions, and any cargo besides the insured shipments." Id. (emphasis added). However, the Fourth Circuit made no ruling in this regard, and was not addressing the issue of declaring CADG as the finder and owner of the salvaged artifacts. This ruling by the

6

that "all of the artifacts that have been or may in the future be recovered by RLP, and reduced to its possession, have been abandoned, and RLP, as the finder of abandoned property, should be awarded title to them." Id. at 4. RLP further asserts that its "intent to acquire title to the recovered artifacts has been affirmatively pursued since 1989, when the first motion for an award of title was granted." Id. at 7.

Robol, whose claim this court dismissed in the Memorandum Order of August 8, 2014, filed a Response to RLP's Motion for Award of Title on September 7, 2014, arguing that "any award of title should be subject to the salvage award requested by Claimants." Resp. at 1, ECF No. 143. RLP filed its Reply on September 15, 2014, in which it states that "Robol has failed to respond substantively in opposition to the motion for award of title." Reply at 3, ECF No. 156. No other party has filed a responsive pleading to RLP's Motion for Title, and the deadline to respond to the Motion has expired.

## II. Analysis

### A. The Law of Finds and the Law of Salvage

This Motion presents the threshold question of whether the maritime law of salvage or the common law of finds should apply

---

Fourth Circuit was twenty-three years ago, prior to any renewed salvage operations, which did not occur until 2014, and prior to this court's ruling that RLP was the real-party-in-interest, not CADG. See Mem. Op. & Order of July 9, 2014, ECF No. 92.

7

to the recovered artifacts.[8] If the law of finds applies to the Central America treasure, then RLP may maintain its Motion for Title. However, if the law of salvage applies to the recovered artifacts, then RLP will instead need to move for a salvage award.

The incentives created by the law of salvage differ from those associated with the law of finds. "In stark contrast to the nature and purpose of salvage law, which is an ancient and time-honored part of the maritime jus gentium, the law of finds is a disfavored common-law doctrine incorporated into admiralty but only rarely applied." R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 435 F.3d 521, 532 (4th Cir. 2006) ("Titanic I"). Whereas salvage law is based on the principle of mutual aid, "a free finders-keepers policy is but a short step from active piracy and pillaging." Id. at 533. Thus, the law of finds should be "applied sparingly — only when no private or public interest would be adversely affected by its application." Id. Further, the application of either doctrine is also influenced by the rights granted to a salvor-in-possession and the rights granted to a finder.

A salvor-in-possession enjoys exclusive access to a shipwreck, with the concomitant right to exclude other would-be

---

[8] RLP is seeking title to the thousands of artifacts that have been recovered, "including many gold and silver coins, and other historical artifacts." Mem. Supp. Mot. at 3.

8

treasure hunters. A finder, however, "cannot exclude others from their attempts to obtain first possession of artifacts recovered from an abandoned wreck." Id. at 535. Although the law of finds promises the finder title to the recovered property, "'if the property is ultimately found not to have been abandoned the law of finds permits no reward, even for efforts to recover the property that have been partly or completely successful.'" Id. at 533 (emphasis added) (quoting Hener v. United States, 525 F. Supp. 350, 356 (S.D.N.Y. 1981)). Moreover, the Fourth Circuit stated that "we are unaware of any court that has awarded salvage-in-possession status to a salvor and, after years of supervision, changed the salvor's role to that of finder, even though we have recognized in the abstract the legal possibility of this occurring under different circumstances." Id. at 534. In sum, "the salvage law is much better suited to supervise the salvage of a historic wreck," due in part to the public interest in what salvors can do with recovered artifacts and how treasure hunters treat the wreck site. Id. at 536.

However, some courts have applied the common law of finds to ancient shipwrecks. See, e.g., Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330, 337 (5th Cir. 1978) ("Disposition of a wrecked vessel whose very location has been lost for centuries as though its owner were still in existence stretches a fiction to absurd lengths."). In

9

a proceeding more than two decades ago in CADG II, the Fourth Circuit even found that "an abandonment may be found, and Columbus-America may be declared the finder and sole owner, as to any recovered parts of the ship, all passenger possessions, and any cargo besides the insured shipments." 974 F.2d at 465.[9]

In order for the law of finds to be applied to property lost at sea, "the treasure-hunter must establish 'abandonment' of the property by clear and convincing evidence." R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 323 F. Supp. 2d 724, 735 (E.D. Va. 2004) ("Titanic II") (citing CADG II, 974 F.2d at 464-65), rev'd in part on other grounds, 435 F.3d 521 (4th Cir. 2006). The bar to prove such abandonment is high. See CADG II, 974 F.2d at 464. An owner's express declaration abandoning title would constitute abandonment, id., but mere "lapse of time and nonuse[]" is insufficient. Wiggins v. 1100 Tons, More or Less, of Italian Marble, 186 F. Supp. 452, 456 (E.D. Va. 1960) (noting, however, that lapse of time and nonuse "may, under certain circumstances, give rise to an implication of intention to abandon"). If "items are recovered from ancient shipwrecks and no owner appears in court to claim them," an inference of abandonment is allowed. CADG II, 974 F.2d at 461; see also Titanic I, 435 F.3d at 532.

However, the Fourth Circuit more recently has affirmed the application of salvage law to historic shipwrecks. See Titanic I,

---

[9] See supra note 7.

10

435 F.3d at 538. In Titanic I, the Fourth Circuit "recognize[d] explicitly the appropriateness of applying maritime salvage law to historic wrecks such as the Titanic." Id. at 524. The wreck of the Central America is certainly a "historic wreck," considering the substantial loss of life and property and the storied history of the shipwreck. See CADG II, 974 F.2d at 455 (describing the sinking of the Central America as "one of the worst disasters in American maritime history"); CADG I, 742 F. Supp. at 1329 (recounting a contemporary newspaper report that "recorded that the Central America was the richest ship, passengers and cargo considered, that was ever engulfed in the waves of the sea, when her rich freight of gold was lost").

A finder acquires ownership over a "find" because the property found has never been owned by a person, whereas a salvor acquires possession over salvaged property in order to save it from destruction. According to the Fourth Circuit:

> Historically, courts have applied the maritime law of salvage when ships or their cargo have been recovered from the bottom of the sea by those other than their owners. Under this law, the original owners still retain their ownership interests in such property, although the salvors are entitled to a very liberal salvage award. Such awards often exceed the value of the services rendered, and if no owner should come forward to claim the property, the salvor is normally awarded its total value.

CADG II, 974 F.2d at 459. Regarding the common law of finds, the Fourth Circuit continues:

11

> A related legal doctrine is the common law of finds, which expresses "the ancient and honorable principle of 'finders, keepers.'" Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel, 833 F.2d 1059, 1065 (1st Cir. 1987). Traditionally, the law of finds was applied only to maritime property which had never been owned by anybody, such as ambergris, whales, and fish.

Id. at 459-60.

Further, the Fourth Circuit has recognized that "under salvage law, the salvor receives a lien in the property, not title to the property, and as long as the case remains a salvage case, the lienholder cannot assert a right to title even though he may end up with title following execution or foreclosure of the lien." R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 286 F.3d 194, 204-05 (4th Cir. 2002) ("Titanic III") (refusing to apply the common law of finds to the salvor-in-possession of the Titanic wreck).

### B. Application of the Maritime Law of Salvage, Not the Common Law of Finds, to the Recovered Artifacts

This court will follow the Fourth Circuit's direction and apply the maritime law of salvage to the wreck of the Central America. See Titanic I, 435 F.3d at 532.

To grant RLP's Motion for Title would change RLP's status from that of salvor-in-possession to that of finder, which action would "open the way to justified claims of unfairness by other would-be finders who are excluded from the wreck site." Id. at 533. This court will not permit RLP to enjoy its right to exclude

12

others from the salvage site while simultaneously moving for title to the recovered artifacts. Were this court to allow RLP, the current salvor-in-possession, to enjoy immediate title to the artifacts it has recovered since early 2014,[10] then the court would risk an "unsupervised rush to the site to recover anything that could be grabbed." Id. The public interest in historic shipwrecks would be diminished, if such an "unsupervised rush" to sunken treasure were to result. Since "[a] finder cannot exclude others from their attempts to obtain first possession of artifacts recovered from an abandoned wreck," id. at 535, likewise, RLP cannot be both a salvor-in-possession and a finder. In addition, RLP fails to mention "any court that has awarded salvage-in-possession status to a salvor and, after years of supervision, changed the salvor's role to that of finder." Id. at 534.

---

[10] As previously indicated, RLP was granted salvor-in-possession status by this court by Memorandum Opinion and Order of July 9, 2014. See ECF No. 92. RLP actively engaged in the salvage of the Central America in 2014. See supra note 5 and accompanying text regarding the inventory logs of the salvaged artifacts and the salvage status reports for 2014. The court does note, however, that salvage operations were suspended in late 2014 for the winter months and apparently have not restarted, as no required reports of any salvage operations by RLP have been made to the court since January 23, 2015. See Report to Court, ECF No. 176 (2014 End of Year Report); see also supra note 5 and accompanying text; Order of May 9, 2014, at 2-3, ECF No. 41 ("RLP is DIRECTED to file with the court regular monthly reports on the current salvage operations . . . .") (bold in original).

13

Moreover, this court granted RLP's Motion to Dismiss the claims of Robol, Butterworth, and Davidson, based in part on RLP's assertion that "none of them constitutes a claim cognizable in admiralty under this Court's in rem jurisdiction." Mot. Dismiss at 2, ECF No. 98.[11] In filing the Motion to Dismiss, RLP specifically stated that "[t]his is a salvage case." Id. at 3 (emphasis added). Similarly, in Titanic II, this court did not allow the salvor, who enjoyed salvor-in-possession status for ten years, to argue that it should be awarded title to the artifacts under the law of finds. 323 F. Supp. 2d at 734-35. Rather, the proper course of action was to pursue a salvage award. Id. at 741.[12] Although RLP asserts that its "intent to acquire title to the recovered artifacts has been affirmatively pursued since 1989," Mem. Supp. Mot. at 7, RLP and its agent CADG have long enjoyed their status as the exclusive salvor-in-possession of the Central America wreck, and it would be inappropriate at this time to reclassify RLP as a "finder."

---

[11] The Fourth Circuit has affirmed this court's dismissal of these claims. See supra note 6; see also supra note 4.

[12] For example, in the R.M.S. Titanic litigation, the district court found, and the Fourth Circuit affirmed, that the law of salvage, and not the law of finds, governed the case. See Titanic I, 435 F.3d at 533-35. Accordingly, the salvor-in-possession of the R.M.S. Titanic filed a motion for a salvage award. R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 742 F. Supp. 2d 784, 808 (E.D. Va. 2010) ("Titanic IV"). See infra Part III.

14

Thus, the court declines to apply the law of finds to this case, because RLP currently and actively enjoys the status of exclusive salvor-in-possession, and because the Fourth Circuit has "explicitly acknowledge[d] the application of salvage law to historic wrecks." Titanic I, 435 F.3d at 538. RLP's status as the exclusive salvor-in-possession of the Central America wreck effectively precludes an application of the law of finds to the recovered artifacts. See Titanic II, 323 F. Supp. 2d at 734-35.

### III. Conclusion

To apply the law of salvage does not mean that RLP will not be fairly and justly rewarded for the time and resources it has invested in its recovery efforts. Even under salvage law, "if no owner should come forward to claim the property, the salvor is normally awarded its total value." CADG II, 974 F.2d at 459. In the Titanic litigation, the salvor-in-possession was eventually awarded a salvage award of one hundred percent (100%) the fair market value of the recovered artifacts, in part because of the salvor-in-possession's "unprecedented feats of skill and dedication, both in the salvage of the artifacts and their conservation and exhibition." R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, 742 F. Supp. 2d 784, 808 (E.D. Va. 2010) ("Titanic IV"). The Titanic salvor-in-possession was later granted title to the artifacts because the amount of the salvage award could be satisfied only by conveying title. R.M.S. Titanic,

15

Inc. v. Wrecked & Abandoned Vessel, 804 F. Supp. 2d 508, 509 (E.D. Va. 2011) ("Titanic V"). This court has previously remarked upon the efforts invested by RLP's agent, CADG, in locating the Central America, as well as the salvaging and the preservation of the recovered artifacts. See CADG I, 742 F. Supp. at 1329 ("[S]ubstantial efforts were made to locate the wreck of the Central America. Such efforts were expensive and time consuming. Scientific and historical research required many hours."); see also CADG IV, 56 F.3d at 571 ("[I]t is apparent that Columbus-America's effort was monumental.").

RLP is, therefore, **ADVISED** that it may move this court for a salvage award under maritime law. RLP is further advised that any motion for a salvage award should address the following seven factors: (1) the labor expended by the salvors in rendering the salvage service; (2) the promptitude, skill, and energy displayed in rendering the service and saving the property; (3) the value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed; (4) the risk incurred by the salvors in securing the property from the impending peril; (5) the value of the property saved; (6) the degree of danger from which the property was rescued; and (7) the degree to which the salvors have worked to protect the historical and archeological value of the wreck and the items salved. CADG II, 974 F.2d at 468; Titanic IV, 742 F. Supp. 2d at 794-95. The

first six factors have been described by the United States Supreme Court as the "main ingredients" to use when fixing an award for salvage, The Blackwall, 77 U.S. (10 Wall) 1, 13-14 (1869), and the seventh factor was added by the Fourth Circuit in CADG II, 974 F.2d at 468.

Since the court determines that the admiralty law of salvage, not the common law of finds, applies to the Central America wreck, RLP's Motion is **DENIED**. The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel for RLP.

**IT IS SO ORDERED.**

/s/ Rebecca Beach Smith
REBECCA BEACH SMITH
CHIEF JUDGE

August 10, 2015